JANE H. TOTH, APPELLANT AND CROSS–RESPONDENT, v. FRANCIS A. TOTH, RESPONDENT AND CROSS–APPELLANT.

No. 4651

February 5, 1964                    389 P.2d 73

*E. R. Miller, Jr.*, of Ely, for Jane H. Toth.

*Gray and Horton*, of Ely, for Francis A. Toth.

## OPINION

By the Court, BADT, C. J.:

The sole question presented by these cross-appeals is whether the court below was guilty of an abuse of discretion in modifying its former decree which awarded the custody of three minor children to the mother. We have concluded that there was no abuse of discretion. The parties will be referred to by their names.

On May 22, 1961, Jane obtained a default decree of divorce from Francis, in which decree she was awarded full custody of the three minor children, then of the respective ages of 7 years, 5 years, and 2 months. On April 25, 1963, the court, upon motion of Francis to modify the decree and pursuant to an extensive hearing on such motion and the introduction of oral testimony and sundry depositions, made an order modifying the decree by awarding to Francis, the father, custody of the three children during the 9 school months of each year and awarding to the mother, Jane, their custody during the 3 summer-vacation months. As a condition for the granting of Francis' motion, the court ordered that he pay $150 a month for the support of the children while they were in the custody of the mother, that he pay the cost of transportation of the

children from Nevada to New Jersey, and likewise from New Jersey to Nevada, in compliance with the court's order, and that he post a bond in the sum of $1,000 for each child, conditioned upon the performance by him of these requirements. The order provided that it go into effect commencing with the fall school term in 1963. It further restrained Jane from removing the children from the jurisdiction of the court and ordered her to deliver the children to the father 1 week before school starts in the fall of each year in the State of New Jersey, commencing with the fall of 1963.

On May 24, 1963, Jane appealed from the order modifying the decree as to custody, and 3 days later Francis appealed from the order insofar as it refused to award him full custody.

Jane specifies as error (1) that the court abused its discretion in making the order changing custody in view of a finding by the court "that the mother's affairs with the man whom she expected to marry did not appear to have affected the children"; (2) that the court abused its discretion in making the change of custody from the mother in Nevada to the father in New Jersey on the ground "that the children in New Jersey would have an opportunity for better housing and better all-around circumstances than available in Ely, Nevada"; (3) that, based upon the implied finding that the mother was a fit person to have custody for 3 months of each year, it was an abuse of discretion to change the custody from her to the father for 9 months of each year.

Francis specifies simply: (1) that the court erred in awarding part-time custody to Jane; and (2) that it erred in not awarding full-time custody to Francis.[1]

---

[1]The power of the district court is found in the provisions of NRS 125.140, which reads:

"1. The court, in granting a divorce, shall make such disposition of, and provision for, the children, as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children.

"2. In actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same."

It is clear that the court based its order upon the undenied showing that for about a year after the divorce Jane carried on an illicit affair with another man. She had sexual relations with him approximately once a week, generally on Saturday nights. She also had dates with some six other men, although she denies having had sexual relations with any of these others. The evidence is in dispute whether such relations were had with one of these other men. In frankly admitting her relations with the one man for almost a year, she justifies this by the statement that they each had affection for the other and had contemplated being married, and that when they had finally concluded that there were obstacles against a successful marriage, they had entirely ceased their relations. Although witnesses testified in general to her good character and her care and schooling of the children, she admitted to indulgence in intoxicating liquors, but maintained that only on one occasion was she drunk.

In Jane's opening brief, her attorney frankly states:

"Both parties obviously love their children. The husband is well fixed financially. He has a large home, a successful business and owns considerable property in New Jersey. C. E. Horton, Mr. Toth's attorney, flew from Ely to New Jersey and obtained the depositions of numerous persons who knew Mr. Toth, all of whom testified as to his excellent character, particularly with regard to his religious preoccupation."

In this connection the court said in its decision: "The mother will be granted custody of the children during the summer portion of each year. The placement of the children is in the father's custody, however, and the Court finds that is in the best interest of the children that they be permitted to go to school in New Jersey, where they have an opportunity for better housing and better all around circumstances than is available in Ely, Nevada. I do not want to deprive the mother of her interest in the children. However, Mrs. Toth, the Court tells you point-blank, unless your conduct improves then certainly further consideration might well be given to modifying this order further. Because I simply cannot approve of your conduct up to this point; there is no

way I can do it, nor any other Court. It does not appear to have affected the children up to this point. It has had some effect, but no severe effect up to this point. I do not feel the immediate best interests of the children is served by uprooting them from their present circumstances provided, of course, Mrs. Toth, your conduct is such that the children are not harmed further as by the past activities on your part as have been testified by you. The modified Decree, so far as the custody of the children is concerned, is conditioned upon these circumstances."

The court emphasized its realization that its one obligation was to make such order as was in the best interests of the children. It recited that it could not condone the plaintiff's conduct; that a stamp of society's approval could not attach to such conduct; that it was both unlawful and immoral.

As to the effect of Jane's conduct upon the children, the court stated: "I am frankly grateful from a humanitarian point of view that [the children] are no more affected than they are." The court's reference appeared to result from Jane's testimony that the children slept in their bedroom upstairs while their mother's illicit relations were going on in the living room downstairs and that the children never observed anything wrong going on. This, however, was brought into dispute by the statement of one of the daughters "that Mom was wiggling on the couch with a man." Jane's defense as to this item is that this man escorted her home from a night club, that he had been drinking too much, that he had made improper advances, and that she was repelling such advances, that all this made quite a bit of noise, and awakened one of the girls who came downstairs and made the observation.

Under the circumstances we are unable to find an abuse of discretion in the order of court modifying the former decree of custody and awarding the main custody to the father, subject to the right in the mother to have custody during the summer months, with the accompanying provisions for the transportation costs and

support by the father. Cosner v. Cosner, 78 Nev. 242, 371 P.2d 278. In Cosner this court, after holding that there was evidence to support the determination that it was for the best interests of the children that their custody be awarded partially to the father and partially to the mother, said: "In any event there is a presumption on appeal in child custody matters that the trial court has properly exercised its judicial discretion in determining what is for the best interest of the child." Cf. Sisson v. Sisson, 77 Nev. 478, 367 P.2d 98.

As to the father's cross-appeal, the court made it clear that it did not consider it best for the interests of the children that they be deprived of their mother's love, care, and attention during 3 months of the year. At the same time the court admonished the mother that a persistence on her part of improper conduct might induce the court to modify further the terms of the original decree. In awarding such part-time custody to the wife, we likewise find no abuse of the court's discretion.

The order changing custody is in all respects affirmed. No costs are awarded.

Let remittitur issue forthwith.

McNAMEE and THOMPSON, JJ., concur.