An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

DOLORES WILLIAMS,
Appellant,
vs.
PATRICK MALLARD,
Respondent.

No. 61936

**FILED**

JUL 17 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a district court order dismissing a complaint to establish grandparent visitation. Eighth Judicial District Court, Family Court Division, Clark County; William B. Gonzalez, Judge.

Respondent Patrick Mallard and his longtime girlfriend Andra Pettway had two children together, and Andra died in October 2010. Appellant Dolores Williams is Andra's mother and the children's maternal grandmother. Dolores had a relationship with the children but after Andra's death, conflict arose between Dolores and Patrick, and Patrick eliminated Dolores's contact with the children. Consequently, Dolores filed the underlying complaint for child custody and/or grandparent visitation on May 9, 2012. Patrick opposed Dolores's complaint and requested that full custody of the children remain with him and that any visitation between Dolores and the children be left to his discretion. Meanwhile, Patrick's new wife had petitioned to adopt the children and on May 10, 2012, one day after Dolores's complaint was filed, the adoption was finalized.

The district court held a hearing on Dolores's complaint and dismissed it finding that there was no legal basis to grant her any custody

15-21662

or visitation rights because the adoption had terminated her legal relationship with the children and she had not established visitation rights at the time the adoption was finalized. The district court further concluded that even if Dolores had a legal basis for grandparent visitation, the court would nonetheless deny her request on the merits because visitation was not in the children's best interest. Dolores brought this appeal.

Having considered the parties' arguments and the record before this court, we conclude that the district court did not err in dismissing Dolores's complaint. *See Bopp v. Lino*, 110 Nev. 1246, 1249, 885 P.2d 559, 561 (1994) (stating that a district court's conclusions of law are reviewed de novo). Although Dolores originally filed her complaint under the grandparent visitation statute, NRS 125C.050, the subsequent adoption affected her legal relationship with the children and consequent standing to obtain visitation rights. Under NRS 127.160, "[a]fter a decree of adoption is entered, the natural parents of an adopted child shall be relieved of all parental responsibilities for such child, and they shall not exercise or have any rights over such adopted child."

In an effort to maintain grandparent visitation rights post-adoption, the Nevada Legislature carved out an exception permitting visitation rights between an adopted child and the biological family to survive the adoption in limited circumstances. NRS 127.171(1)(b) allows the court in an adoption proceeding to grant reasonable visitation rights to "[c]ertain relatives of the child *only if a similar right had been granted previously pursuant to NRS 125C.050.*" (Emphasis added.) An adoption's effect on grandparent rights was discussed at length in *Bopp v. Lino*

where this court concluded that because the grandparents had not been granted any visitation rights before the adoption, they lacked standing to petition for visitation eight months later. 110 Nev. at 1251, 885 P.2d at 562, In commenting on NRS 127.171, this court stated

> [i]f the district court already had unfettered jurisdiction to grant visitation rights after an adoption, the Nevada Legislature would not have enacted NRS 127.171. Moreover, the Nevada Legislature would not have limited visitation rights to those already possessing that right if it had intended the district court to be able to create visitation rights after an adoption.

*Id.* at 1253, 885 P.2d at 563.

NRS 127.171 and the holding in *Bopp* are dispositive to the district court's jurisdiction in this case. One day after Dolores filed her complaint, the adoption by Patrick's new wife became final and Dolores had not already established any grandparent visitation rights. Accordingly, the district court lacked jurisdiction to grant Dolores any visitation rights as a grandparent under NRS 125C.050.[1]

Our dissenting colleague concludes that because Dolores had filed her complaint one day before the adoption became final she somehow

---

[1]The district court relied on the adoption in dismissing Dolores's complaint even though no evidence was placed in the record regarding these facts and the district court did not formally take judicial notice. Nevertheless, neither party dispute the fact and date of the adoption nor objected to judicial notice below, and thus any error in the judicial notice procedure was waived. *See Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. 434, 437, 245 P.3d 542, 544 (2010).

preserved her standing to secure visitation rights under NRS 125C.050. Such conclusion is misplaced. Even though Dolores had standing on the day she filed her complaint, by the time of the hearing, the adoption had been finalized, thereby divesting the court of jurisdiction to grant Dolores grandparent visitation rights. *See Birth Mother v. Adoptive Parents*, 118 Nev. 972, 975, 59 P.3d 1233, 1235 (2002) (observing that "subsequent to an adoption decree, a natural parent has no rights to the child unless provided for in the decree"); *see also State ex rel. Kaylor v. Bruening*, 684 N.E.2d 1228, 1232 (Ohio 1997) (holding that the adoption decree terminating the natural mother's parental rights divested the court of jurisdiction to proceed on her pending motion for visitation with the child). Thus, Dolores's complaint was properly dismissed on this ground.

Finally, as an independent ground for denying the complaint, the district court at the hearing reached the merits of Dolores's request in finding that she was unable to rebut the presumption that visitation is not in the children's best interest under NRS 125C.050(4), and citing the parties' acrimonious relationship including threats, cussing, and assaults, as well as police involvement. The district court also referenced allegations that Dolores had improperly taken the children's social security benefits and had sought medical treatment for the children without permission and under the guise of a guardianship that never existed. *See* NRS 125C.050(6) (setting forth the factors for determining whether the presumption has been rebutted). We conclude that the district court's alternative ground for denying the complaint was not an abuse of discretion. *See Rennels v. Rennels*, 127 Nev., Adv. Op. 49, 257 P.3d 396, 399 (2011) (stating that district court custody decisions are

reviewed for an abuse of discretion and that factual findings supported by substantial evidence will not be set aside).

We are cognizant of the unfortunate circumstances of this case and we are sympathetic to Dolores's plight, but the law is clear and we must uphold it. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Parraguirre

_____, J.
Douglas

CHERRY, J., dissenting:

I disagree with the majority's application of NRS 127.171 and *Bopp v. Lino,* 110 Nev. 1246, 885 P.2d 559 (1994), and the result that followed. The majority decision strips a grandmother of a relationship with her grandchildren, whom she had nurtured and cared for during their mother's prolonged illness that ended in her untimely death.

Dolores's complaint filed one day before the adoption preserved her right to secure visitation rights with her grandchildren. The holding in *Bopp* and its interpretation of NRS 127.171 is not as clear as the majority posits. The grandparents in *Bopp* petitioned for visitation rights eight months after the adoption, 110 Nev. at 1248, 885 P.2d at 560, whereas Dolores filed her petition in this case *before* the adoption was finalized. The discussion in *Bopp* focuses on the timing of the petition by

stating in different places that the grandparents "did not *petition* for visitation rights prior to or at the adoption proceedings;" "Nevada does not have a statute permitting ex-relatives to *petition* for visitation;" the grandparents had "no standing to *petition* for visitation" after the adoption decree was entered; and that "NRS 127.171 serves as a 'statute of limitations' on the right of a grandparent to *petition* for visitation rights to a grandchild." *Bopp*, 110 Nev. at 1251, 1253, 885 P.2d at 562-63 (emphasis added). Under my reading of *Bopp*, Dolores had standing to petition for visitation rights at the time she filed her complaint and the district court retained jurisdiction to grant her request.

Moreover, the adoption being finalized one day later was beyond Dolores's control. Dolores alleges that she never received notice of the adoption proceeding in time to intervene and establish her rights. Dolores attempted to participate in the adoption case, but by then it was too late and her motion to intervene was denied.

Aside from the jurisdictional issue, the scant record before us does not support the district court's finding that Dolores failed to rebut the presumption under NRS 125C.050(4) that once Patrick denied Dolores visitation it is presumed that such visitation would not be in the children's best interest. The district judge reached this conclusion not after an evidentiary hearing fully developing the factual issues, but based merely on the pleadings and the judge's knowledge of these parties from related proceedings before him. *See* NRS 125C.050(6) (setting forth factors for determining whether the party seeking visitation has rebutted the presumption); *see generally Rooney v. Rooney*, 109 Nev. 540, 542-43, 853 P.2d 123, 124-25 (1993) (noting that an evidentiary hearing is required on

a motion regarding custody if the moving party demonstrates a prima facie case).

In fact, the limited record before this court could establish otherwise. According to Dolores, Andra and the children had periodically lived with her through the years and then with more frequency once Andra became ill. Dolores alleged that Patrick had been having an affair with Andra's cousin and then married her after Andra's death and began to alienate the children from Dolores. She claimed that Patrick had denied her visitation and had no intention of fostering any relationship between her and the children, and that without court intervention she would be forever alienated from them. As to Patrick's allegation that Dolores had taken the children for medical treatment without authorization, Dolores claimed she had taken the children for medical care in the past and that the children had breathing problems that sometimes needed immediate attention.

The district court's reliance on the acrimonious relationship between Patrick and his new wife and Dolores to support the conclusion that visitation with Dolores is not in the children's best interest is inadequate. How often do parents and other relatives have to put aside their own differences for the benefit of the children in their lives? Are these children really better off without a relationship with their grandmother (who could be one of the only ties to their deceased mother) just because the adult parties in this case do not get along? I cannot say so based on the limited record before us. Under the majority decision, Dolores could very well be forever precluded from any contact with her

grandchildren by virtue of the fact that her daughter died an untimely death.

Dolores deserves her day in court. I would remand this matter for an evidentiary hearing to determine what is truly in the best interest of these young children. *See* NRS 125C.050(4). For those reasons, I respectfully dissent.

_____, J.
Cherry

cc:    Hon. William B. Gonzalez, District Judge, Family Court Division
       Sterling Law, LLC
       Pisanelli Bice, PLLC
       Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A